# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ST. FRANCIS HOLDINGS, LLC and
FRANCIS J. AVERILL, M.D.,

       Plaintiffs,

v.                                      Case No: 8:20-cv-1101-T-02

PAWNEE LEASING
CORPORATION; and
AMUR EQUIPMENT FINANCE, INC.

       Defendants.

_____/

## ORDER GRANTING PAWNEE LEASING CORPORATION'S MOTION TO DISMISS AND DEFERRING MOTION TO STRIKE

      This matter comes before the Court on Defendant Pawnee Leasing Corp.'s Motion to Dismiss, Dkt. 53, Plaintiffs' Amended Complaint, Dkt. 21, as well as Defendant Pawnee's Motion to Strike Jury Demand, Dkt. 57. Plaintiffs St. Francis Holdings LLC and Dr. Francis Averill, a managing member of St. Francis, filed responses to both motions. Dkts. 62, 68. Defendant Pawnee then replied. Dkts. 70, 75. The Court held a hearing on these issues on September 9, 2020. Dkt. 79. With the benefit of briefing and oral argument, the Court grants Defendant Pawnee's Motion to Dismiss without prejudice. The Court defers ruling on Defendant Pawnee's Motion to Strike Jury Demand.

## BACKGROUND

This matter arises from Plaintiffs' purchase of the SculpSure Contouring Platform—a non-invasive body-contouring device that eliminates unwanted fat cells without surgery—and the TempSure RF System—a device that purportedly reduces the appearance of wrinkles. Dkt. 21 at 6. Plaintiffs entered into four agreements to procure this equipment. *Id.* at 9. First, they signed two purchase agreements with Cynosure Inc., a manufacturer of aesthetic medical devices. Dkt. 21, Ex. 4. One agreement was a purchase order for the SculpSure System, and the other agreement was a purchase order for the TempSure System. *Id.* Second, Plaintiffs signed a contract with MMP Capital Inc., an equipment finance company. Dkt. 21, Ex. 10. This contract provided Plaintiffs with financing to procure the TempSure System. *Id.* Finally, Plaintiffs signed a contract with Defendant Pawnee Leasing Corp., which is also an equipment financing company. Dkt. 21, Ex. 6; Dkt. 86, Ex. A. This contract ("the Pawnee Lease Agreement") allowed St. Francis to lease the SculpSure System from Defendant Pawnee.[1] *Id.* Plaintiff Dr. Averill, who is a licensed attorney, personally guaranteed the lease with Defendant Pawnee. *Id.* at 1. A Cynosure representative named Kris Huston presented these agreements to Plaintiffs during a June 2019 meeting. *Id.* Plaintiffs

---

[1] Because Defendant Pawnee entered into an agreement with Plaintiffs for only the SculpSure System—and not the TempSure System—any claims related to the TempSure System are irrelevant against Defendant Pawnee.

allege that Huston misrepresented the SculpSure System as "virtually painless," "hands free," well-suited for a new aesthetics practice, and likely to generate profits. *Id.*

A large part of the present dispute centers on two sections of the Pawnee Lease Agreement: the main lease agreement and the "Addendum to Lease Agreement (Pre-delivery and Installation)." The main lease agreement contained the following three provisions that are important for present purposes:

> You must notify [Pawnee] immediately in writing if you reject the Equipment when it is delivered . . . Upon the Acceptance Date, you will be deemed to have agreed that the Equipment is satisfactory and is in good working condition and this Lease will become your ABSOLUTE UNCONDITIONAL OBLIGATION THAT YOU CANNOT CANCEL OR TEMINATE[.]

Dkt. 86, Ex. A at 2.

> Neither the vendor of the Equipment nor any salesman is [Pawnee's] agent or authorized to waive or alter any terms or conditions of this Lease. No representations as to the Equipment or any other matter by the vendor of salesman effect your obligations to [Pawnee].

*Id.*

> DO NOT SIGN THIS GUARANTY UNLESS YOU UNDERSTAND AND AGREE TO ALL OF ITS TERMS AND THE TERMS OF THE LEASE[.]

*Id.* at 1.

The Addendum contained the following two provisions that are important for present purposes:

3

> [St. Francis] requests that [Pawnee] accept the Lease and pay the above vendor ("Vendor") based upon [St. Francis's] complete satisfaction of the Equipment as it is now. [St. Francis] also agrees that the Equipment is irrevocably accepted for all purposes under the Lease.

*Id.* at 7.

> [St. Francis] HAS READ AND AGREES TO ALL TERMS AND CONDITIONS OF THE LEASE, INCLUDING ALL ATTACHMENTS AND ADDENDA IF ANY. [ST. FRANCIS] UNDERSTANDS THAT . . . [its] OBLIGATION TO MAKE THE LEASE PAYMENTS AND PERFORM ITS OTHER OBLIGATIONS UNDER THE LEASE ARE ABSOLUTE [and] UNCONDITIONAL[.]

*Id.*

Plaintiffs signed all four agreements in late June 2019. Dkt. 21 at 9. After receiving delivery of the equipment in early July 2019, Dkt. 21 at 11, Dr. Averill attempted to cancel the Pawnee Lease Agreement on August 7, 2019, by sending a "Notice of Cancellation" on his law firm's official letterhead. Dkt. 21, Ex. 13. Defendant Pawnee refused to cancel the agreement or accept return of the equipment. Dkt. 21 at 17.

Plaintiff St. Francis filed the instant action in Florida state court in December 2019. Dkt. 1, Ex. B. The original complaint named only Cynosure as a defendant. *Id.* Cynosure removed the case to this Court in May 2020. Dkt. 1. Plaintiffs then filed an Amended Complaint in June 2020, adding Dr. Averill as a plaintiff and MMP Capital, Pawnee Leasing Corp., and Amur Equipment Finance,

4

Inc. as defendants.[2] This Court severed and transferred the claims against Cynosure and MMP Capital to other courts pursuant to mandatory forum-selection clauses. Dkt. 81.

Plaintiffs bring four counts against Defendant Pawnee in the Amended Complaint: (1) fraud in the inducement; (2) violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201–501.213 ; (3) rescission; and (4) civil conspiracy. Dkt. 21. Defendant Pawnee moves to dismiss these claims, arguing Plaintiffs failed to state a claim upon which relief can be granted. Dkt. 53.

Defendant Pawnee also moves to strike Plaintiffs' demand for a jury, arguing Plaintiffs waived their right to a jury trial by signing the Pawnee Lease Agreement. Dkt. 57 at 2. Plaintiffs argue they were fraudulently induced into signing the agreement, and this fraud vitiates any alleged waiver. Dkt. 68 at 1. Additionally, Plaintiffs argue that Dr. Averill did not knowingly and intelligently waive this right. *Id.*

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a), set forth in "numbered

---

[2] Defendant MMP Capital assigned its interest in the financing agreement with Plaintiffs to Amur Equipment Finance, Inc. Dkt. 21 at 5.

paragraphs each limited as far as practicable to a single set of circumstances," Fed.

R. Civ. P. 10(b). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts must also view the

complaint in the light most favorable to the plaintiff and resolve any doubts as to

the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc*.,

29 F.3d 1480, 1483 (11th Cir. 1994) (per curiam). A claim is plausible on its face

"when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*,

556 U.S. at 678. The Court accepts Plaintiffs' factual allegations as true at this

stage. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th

Cir. 1997).

     Rule 9(b) imposes a heightened pleading standard for claims sounding in

fraud. "In alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This rule forces

a plaintiff to offer more than "mere conjecture," *U.S. ex rel. Clausen v. Lab'y

Corp. of Am., Inc*., 290 F.3d 1301, 1313 (11th Cir. 2002), and "requires that a

complaint plead facts giving rise to an inference of fraud." *W. Coast Roofing &

Waterproofing, Inc. v. Johns Manville, Inc*., 287 F. App'x 81, 86 (11th Cir. 2008).

Rule 9(b) is satisfied if the complaint sets forth: (1) precisely what statements (or omissions) were made; (2) the time and place of such statements and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants derived from the fraud. *See Clausen*, 290 F.3d at 1310 (citing *Ziemba v. Cascade Int'l, Inc*., 256 F.3d 1194, 1202 (11th Cir. 2001)). In short, Rule 9(b) requires that the complaint state the "who, what, when, where, and how" of the alleged fraud. *See Garfield v. NDC Health Corp*., 466 F.3d 1255, 1262 (11th Cir. 2006).

## LEGAL ANALYSIS

### I.    Motion to Dismiss

#### A. Count I: Fraud in the Inducement

Plaintiffs first claim Defendant Pawnee fraudulently induced them into signing the Pawnee Lease Agreement. Dkt. 21 at 17. To state a claim for fraudulent inducement under Florida law, a plaintiff must allege four elements: (1) a false statement regarding a material fact; (2) the defendant's knowledge that the representation is false; (3) the defendant's intent that the representation induces another's reliance; and (4) injury to the party acting in reliance. *Thompkins v. Lil' Joe Records, Inc*., 476 F.3d 1294, 1315 (11th Cir. 2007) (citations omitted); *see*

*also Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (clarifying that "[j]ustifiable reliance is not a necessary element of fraudulent misrepresentation").

Plaintiffs base their fraudulent inducement claim on two issues: (1) the alleged misrepresentations made by Huston during the June 2019 meeting, and (2) contract provisions in the Pawnee Lease Agreement limiting Plaintiffs' ability to return the SculpSure System. Dkt. 62 at 10. The Court will address each issue in turn.

### 1. Huston's Representations

Plaintiffs first argue that Huston fraudulently induced them into signing the Pawnee Lease Agreement by misrepresenting the SculpSure System as "virtually painless," "hands free," well-suited for a new aesthetics practice, and likely to generate profits. Dkt. 21 at 18. Both parties agree Huston works for Cynosure—not Defendant Pawnee. Dkt. 21 at 2; Dkt. 53 at 3. Nonetheless, Plaintiffs claim Defendant Pawnee can be held liable for Huston's alleged misrepresentations under two theories. First, Plaintiffs argue Huston was acting as an agent for Defendant Pawnee, making Pawnee vicariously liable for Huston's statements. Dkt. 62 at 8. Second, Plaintiffs argue that even if Huston was not Defendant Pawnee's agent, Huston's alleged misrepresentations should still taint the Pawnee Lease Agreement with fraud because it should be construed together with the Cynosure agreements and the MMP Capital agreement as a single instrument. Dkt.

62 at 9. The Court finds that both theories fail to allege a claim against Defendant Pawnee for fraudulent inducement.

The Court will address the agency theory first. Plaintiffs do not allege Defendant Pawnee gave Huston actual authority to act as its agent. Instead, they argue Huston acted as Defendant Pawnee's agent under apparent authority. Dkt. 62 at 8. Apparent authority exists only when the *principal* creates the appearance of an agency relationship. *See Villazon v. Prudential Health Care Plan, Inc.*, 843 So. 2d 842, 855 (Fla. 2003) (quoting *Spence, Payne, Masington & Grossman, P.A. v. Philip M. Gerson, P.A.*, 483 So. 2d 775, 777 (Fla. 3d DCA 1986)). This authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself. *See Stone v. Palms West Hosp.*, 941 So. 2d 514, 519 (Fla. 4th DCA 2006). In order to state a claim under apparent authority, a plaintiff must allege that: (1) the alleged principal made a representation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal; (2) the third party relied on this representation; and (3) the third party changed its position in reliance on the representation. *See Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995).

Here, Plaintiffs have alleged very little factually to show there was an agency relationship between Huston and Defendant Pawnee. Plaintiffs claim Huston had apparent authority to act on Defendant Pawnee's behalf because he

discussed financing options with Plaintiffs during the June 2019 meeting, and he also presented Plaintiffs with a preprinted copy of the Pawnee Lease Agreement. Dkt. 62 at 10. Other than that, Plaintiffs offer only conclusory statements that Huston was acting on behalf of Defendant Pawnee. Dkt. 21 at 6, 20.

The Court holds that Plaintiffs have not adequately alleged an agency relationship between Huston and Defendant Pawnee. Any acts or statements made by Huston—as the purported agent—cannot form the basis of apparent authority under Florida law. *See Stone*, 941 So. 2d at 519. What matters is whether Defendant Pawnee—as the purported principal—created the appearance of agency. *See Villazon*, 843 So. 2d at 855. Plaintiffs do not allege any facts showing that Defendant Pawnee engaged in any actions or made any representations that created the reasonable appearance of an apparent agency relationship with Huston. In fact, the Pawnee Lease Agreement expressly provided that "[n]o representations as to the equipment or any other matter by the vendor or salesman effect your obligations to [Pawnee]." Dkt. 86, Ex. A at 2. This provision directly undermines Plaintiffs' agency argument and raises questions about the reasonableness of Plaintiffs' belief that Huston was an agent of Pawnee.

While it is true that "[t]he existence of an agency relationship is normally one for the trier of fact to decide," *Villazon*, 843 So. 2d at 853, Plaintiffs are required at the pleading stage to raise a right to relief beyond mere speculation. *See*

*Twombly*, 550 U.S. at 555. This burden is heightened when the claim sounds in fraud. *See* Fed. R. Civ. P. 9(b). In support of their agency theory, Plaintiffs have offered only conclusory allegations and their assumptions based on Huston's actions. Accordingly, Plaintiffs' claim must be dismissed on this basis. *See Mesa v. Am. Express Educ. Assurance Co*., No. 16-CV-24447-HUCK, 2017 WL 2210271, at *3 (S.D. Fla. May 18, 2017) (dismissing conclusory allegations regarding a purported agency relationship).

Plaintiffs' second theory fares no better. "Under Florida law, where two or more documents are executed *by the same parties*, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract." *Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645, 648 (11th Cir. 1992) (emphasis added). When determining whether two or more agreements should be construed separately or as a single agreement, courts analyze the dates the agreements were executed, whether the same parties signed each agreement, the subjects of the agreements, and whether the agreements cross-referenced the others. *Id.* at 649.

Here, there are four agreements signed by four different parties. Plaintiffs signed two purchase agreements with Cynosure, a financing agreement with MMP Capital for the TempSure System, and a lease agreement with Defendant Pawnee for the SculpSure System. Neither Pawnee, Cynosure, nor MMP Capital signed

11

onto the other agreements. Even though Huston gave Plaintiffs all four agreements on the same day, the parties largely executed the agreements on different days. *See* Dkt. 21, Ex. 6 at 5 (Pawnee Lease Agreement executed on July 11, 2019); Dkt. 21, Ex. 4 at 2 (Cynosure purchase agreement for the SculpSure System executed on June 26, 2019); *id.* at 3 (Cynosure purchase agreement for the TempSure System executed on June 25, 2019); Dkt. 21, Ex. 10 at 1 (MMP Capital financing agreement executed on June 26, 2019). Moreover, the Pawnee Lease Agreement had a slightly different aim than the other contracts. It was a lease agreement to help Plaintiffs finance their purchase of the SculpSure System, whereas the MMP Capital agreement helped Plaintiffs purchase the TempSure System and the Cynosure agreements were purchase orders for both systems. Dkt. 21, Exs. 4, 6, 10. Finally, the Cynosure agreements and the MMP Capital agreement contained integration clauses expressly disclaiming any additional or different terms and conditions. Dkt. 21, Exs. 4, 10. For these reasons, the Court holds that these agreements should not be construed as a single instrument, and Plaintiffs cannot support their fraudulent inducement claim on this basis.

## 2.  Contract Provisions Limiting Return of SculpSure System

Plaintiffs offer an additional basis for their fraudulent inducement claim: they argue Defendant Pawnee failed to disclose it would require Plaintiffs to agree that they accepted the SculpSure System before Plaintiffs actually received the

System, which, in turn, obstructed Plaintiffs' ability to return the equipment or

cancel the contract. Dkt. 21 at 10. This argument is based on the following

provisions from the Pawnee Lease Agreement:

> You must notify [Pawnee] immediately in writing if you reject the
> Equipment when it is delivered . . . Upon the Acceptance Date, you
> will be deemed to have agreed that the Equipment is satisfactory and
> is in good working condition and this Lease will become your
> ABSOLUTE UNCONDITIONAL OBLIGATION THAT YOU
> CANNOT CANCEL OR TEMINATE.

Dkt. 86, Ex. A at 2.

> [St. Francis] requests that [Pawnee] accept the Lease and pay the
> above vendor ("Vendor") based upon [St. Francis's] complete
> satisfaction of the Equipment as it is now. [St. Francis] also agrees
> that the Equipment is irrevocably accepted for all purposes under the
> Lease.

*Id.* at 7. Plaintiffs say they would not have entered into the Pawnee Lease

Agreement had they known Defendant Pawnee would use these contract terms to

obstruct return of the equipment. Dkt. 21 at 19.

The Court holds that these allegations do not support a claim for fraudulent

inducement. Florida law requires a plaintiff to show the defendant made a false

statement of material fact. *See Thompkins*, 476 F.3d at 1315. Yet, here, Plaintiffs

base their fraudulent inducement claim on purported *ambiguities* in the contract.

Dkt. 21 at 10 (saying the Pawnee Leasing Agreement was "less than pellucid");

Dkt. 62 at 11 ("The Pawnee Lease Agreement *ambiguously* directs St. Francis to

notify Pawnee if the equipment is rejected when delivered while at the same time

asking St. Francis to somehow agree on the day of execution that it is satisfied with equipment it had never seen.") (emphasis added). Plaintiffs have not alleged that Defendant Pawnee made any false statements regarding these contract terms. In fact, Plaintiffs have not alleged that Defendant Pawnee made *any* statements to Plaintiffs prior to Plaintiffs signing the agreement.

Plaintiffs have also failed to establish an omission of material fact. *See ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003) (recognizing that Florida law allows fraud to be established through omission). Plaintiffs argue they would have never entered into the agreement had they known Pawnee would request Plaintiffs to agree to pre-delivery acceptance of the equipment. Dkt. 21 at 19. Yet, in reality, Plaintiffs *did* know this information. Plaintiffs had the opportunity to review the contract terms. Plaintiffs—one of whom is a licensed attorney—agreed to the terms. The agreement expressly stated that Plaintiffs should not sign unless they understood and agreed to every term. Dkt. 86, Ex. A at 1. There are no allegations that Defendant Pawnee actively concealed this information or failed to provide the full picture. Accordingly, Plaintiffs' claim for fraudulent inducement fails on this basis as well.[3]

---

[3] Because the Court finds that Plaintiffs have failed to state a claim for fraudulent inducement, the Court need not address the parties' arguments about the economic loss rule.

## B. Count II: FDUTPA

Next, Plaintiffs allege Defendant Pawnee violated FDUTPA, which proscribes "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204 (2019). To state a FDUTPA claim, a plaintiff must allege "(1) a deceptive act or unfair practice, (2) causation, and (3) actual damages." *State v. Beach Blvd Auto. Inc.*, 139 So. 3d 380, 393 (Fla. 1st DCA 2014). Deceptive acts include representations, omissions, or practices that are likely to mislead a consumer acting reasonably in the circumstances. *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). Unfair practices are those that offend established public policy and are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Id.*

Plaintiffs offer two theories to support their FDUTPA claim. First, Plaintiffs argue Defendant Pawnee engaged in deceptive and unfair business practices when Huston—who Plaintiffs allege was acting as Defendant Pawnee's agent—made misrepresentations during the June 2019 meeting. Dkt. 21 at 23. This claim fails for the same reasons stated above. Plaintiffs have not adequately alleged an agency relationship between Defendant Pawnee and Huston.

Second, Plaintiffs claim Defendant Pawnee violated FDUTPA by requiring Plaintiffs to stipulate that they accepted the SculpSure System before Plaintiffs

15

actually received the equipment. *Id*. Plaintiffs say Defendant Pawnee schemed to secure this acceptance in order to make the Pawnee Lease Agreement "irrevocable and non-cancellable." *Id.* at 24.  In response, Defendant Pawnee argues these actions do not amount to a deceptive or unfair trade practice because the terms in the agreement were clear and Plaintiffs—one of whom is a licensed attorney— voluntarily agreed to them. Dkt. 53 at 13.

The Court agrees with Defendant Pawnee. Plaintiffs have failed to show how Defendant engaged in a deceptive or unfair trade practice. The pre-delivery acceptance term essentially operates as a waiver of Plaintiffs' ability to inspect and reject the equipment. Such provisions are allowed under Florida's commercial code. *See* Fla. Stat. § 672.513 ("*Unless otherwise agreed . . .* where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner.") (emphasis added). Plaintiffs do not allege that Defendant Pawnee omitted any information about the pre-delivery acceptance term or made any representations that misled Plaintiffs about the effects of this term. Simply put, if Plaintiffs did not wish to waive this inspection right, they should not have agreed to it.

Moreover, Plaintiffs have failed to show how any tension between the two contract provisions amounts to a deceptive or unfair trade practice. The first term

16

appeared in the main lease agreement, and the second term appeared in the Addendum. Dkt. 86, Ex. A. The Addendum expressly stated that it amended certain terms in the main lease agreement. *Id.* at 7. This means the pre-delivery term superseded the first term allowing inspection. When Plaintiffs argue Defendant Pawnee violated FDUTPA by presenting a lease agreement that "ambiguously directed St. Francis to notify Pawnee if the equipment is rejected when delivered while at the same time asking St. Francis to somehow agree on the day of execution that it is satisfied with equipment it had never seen," Plaintiffs fail to recognize that this is exactly the function an addendum should serve: to modify the contract terms in an underlying agreement. Accordingly, Plaintiffs have failed to show how these facts amount to an unfair or deceptive trade practice under FDUTPA.

As a final point, Plaintiffs have also failed to plead actual damages. It is well-established that actual damages are a required element of a FDUTPA claim. *See Lustig v. Bear Stearns Residential Mortg. Corp.*, 411 F. App'x 225, 225 (11th Cir. 2010) (per curiam); *see also* Fla. Stat. § 501.211(2) (2019). There are two ways to measure actual damages in a FDUTPA claim: (1) the value between what was promised and what was delivered; or (2) the total price paid for a valueless good or service. *See Dem. Rep. Congo v. Air Cap. Grp., LLC*, 614 F. App'x 460, 472 (11th Cir. 2015) (citing *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d

DCA 1984)). Actual damages do not include special or consequential damages. *See Siever v. BWGaskets, Inc.*, 669 F. Supp. 2d 1286, 1294 (M.D. Fla. 2009). Consequential damages are damages that do not necessarily result from the injury complained of or which the law does not imply as the result of that injury. *See* 17 Fla. Jur. 2d Damages § 140.

Here, Plaintiffs allege St. Francis[4] "has suffered actual damages in the form of having to make lease payments and carrying expensive insurance for the equipment." Dkt. 21 at 17. Plaintiffs also allege that "St. Francis did not receive the benefit of the bargain." *Id.* The Court holds that Plaintiffs have failed to plead actual damages. Plaintiffs must show one of two things to support their FDUTPA claim: (1) there was a difference between the value Defendant Pawnee promised and the value Defendant Pawnee delivered, or (2) Plaintiffs paid for a valueless good or service. *See Air Capital*, 614 F. App'x at 472. Plaintiffs admit they have never used the SculpSure System. Dkt. 21 at 11. This undermines their ability to show the System is valueless or less than what Defendant Pawnee promised. And although the "benefit of the bargain" allegation may constitute actual damages, Plaintiffs have not pled enough information as to what the "bargain" is. *See Emondson v. 2001 Live, Inc.*, No: 16-cv-3243-T-17AEP, 2017 WL 10085029, at *2 (M.D. Fla. July 25, 2017) (dismissing FDUTPA claim because plaintiff pled

---

[4] Plaintiffs do not allege how Plaintiff Dr. Averill has suffered any actual damages.

18

only conclusory allegations of actual damages). Should Plaintiffs choose to replead this claim, they must specify what the actual damages are, describe how both Plaintiffs suffered those damages, and remove any mention of consequential damages.

### C. Count III: Rescission of Contract

Plaintiffs next ask this Court to rescind their agreement with Defendant Pawnee. Dkt. 21 at 24. Rescission is an equitable remedy designed to undo a transaction between parties and restore their former status. *See Billian v. Mobil Corp.*, 710 So. 2d 984, 990 (Fla. 4th DCA 1998). Florida law requires plaintiffs to plead the grounds for rescission, which can include fraud, false representations, mutual mistake, and impossibility of performance. *Id.* at 991.

Here, Plaintiffs have failed to plead grounds for rescission. As explained above, Plaintiffs have not pled enough facts to support claims against Defendant Pawnee for fraudulent inducement or a violation of FDUTPA. Because Plaintiffs have not properly established fraud or any other ground for rescission, their claim for rescission cannot stand.

### D. Count IV: Civil Conspiracy

Finally, Plaintiffs accuse Defendant Pawnee of engaging in a civil conspiracy with Cynosure, MMP Capital, and Amur. Dkt. 21 at 26. Under Florida law, the elements of civil conspiracy are: (1) an agreement between two or more

19

parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the

doing of some over act in furtherance of the conspiracy, and (4) damage to the

plaintiff as a result of the acts performed pursuant to the conspiracy. *See Walters v.*

*Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).  "It is not enough to

simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739

F.2d 553, 557 (11th Cir. 1984) (holding that courts should dismiss conspiracy

claims that are conclusory, vague, and general); *see also Twombly*, 550 U.S. at

556–57 ("[A] conclusory allegation of agreement at some unidentified point does

not supply facts adequate to show illegality."). Indeed, when a conspiracy claim

sounds in fraud, Rule 9(b)'s heightened pleading standards apply. *See Am. United*

*Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067–68 (11th Cir. 2007).

Here, Plaintiffs allege Defendant Pawnee conspired with Cynosure, MMP

Capital, and Amur to fraudulently induce Plaintiffs into signing agreements that

included false statements and obstructed Plaintiffs' ability to return the SculpSure

equipment. Dkt. 21 at 28. Plaintiffs again rely on an agency theory, saying

Huston's alleged misrepresentations were the "first step" of the conspiracy. Dkt.

62 at 19. Additionally, Plaintiffs claim Defendant Pawnee was "aware of and

authorized" Cynosure's allegedly false and deceptive marketing practices. Dkt. 21

at 27. According to Plaintiffs, "[t]he specificity of the misrepresentations and

Defendants' alleged knowledge of the fraud, authorization for Huston to present

financial terms, and efforts to stymie Plaintiffs' return of the equipment are all factual allegations supporting the existence of an unlawful agreement between Defendants and actions taken in furtherance of a conspiracy." Dkt. 62 at 20.

These conclusory statements are not enough to satisfy Rule 9(b)'s heightened pleading standards. Critically, Plaintiffs have not provided particularized allegations showing Defendant Pawnee entered into a conspiratorial agreement with Cynosure, MMP Capital, and Amur. *See Tucci v. Smoothie King Franchises, Inc.*, 215 F. Supp. 2d 1295, 1302 (M.D. Fla. 2002) (dismissing claim for civil conspiracy where plaintiff did not allege sufficient facts to infer a conspiratorial agreement between defendants). Nor have Plaintiffs pled any facts showing Defendant Pawnee was actually "aware of and authorized" Cynosure's allegedly fraudulent practices. Instead, Plaintiffs merely assert these parties acted "in concert with one another" to structure a "non-cancellable" deal, without providing any specificity as to the time or place of the parties' conspiratorial agreement, or the role Defendant Pawnee allegedly agreed to play in the conspiracy. Courts have rejected conclusory allegations such as these in the conspiracy context. *See Albra v. City of Fort Lauderdale*, 232 F. App'x 885, 890–91 (11th Cir. 2007) (stating that in order "[t]o allege a conspiracy, a plaintiff must make particularized allegations that are more than vague or conclusory" and must show some evidence of agreement between the defendants") (internal quotation

21

marks omitted); *see also Twombly*, 550 U.S. at 564 n.10 (noting that a defendant

seeking to respond to such conclusory allegations of a conspiracy "would have

little idea where to begin" because the pleadings "mentioned no specific time,

place, or person involved in the alleged conspiracies"). Accordingly, Plaintiffs'

claim for civil conspiracy must be also dismissed.

## II.    Motion to Strike Jury Demand

"The Seventh Amendment right to a trial by jury is a well-established and

essential component to our federal judicial system." *FGDI, Inc. v. Bombardier*

*Cap. Rail, Inc.*, 383 F. Supp. 2d 1350, 1352 (M.D. Fla. 2005). However, it is also

well-established that a party can waive the right to a jury trial by contract if the

waiver is knowing, voluntary, and intelligent. *Bakrac, Inc. v. Villager Franchise*

*Sys., Inc.*, 164 F. App'x 820, 823 (11th Cir. 2006). The question of whether the

right has been waived is governed by federal law. *See Simler v. Conner*, 372 U.S.

221, 222 (1963).

"In making this assessment, courts consider the conspicuousness of the

waiver provision, the parties' relative bargaining power, the sophistication of the

party challenging the waiver, and whether the terms of the contract were

negotiable." *Bakrac*, 164 F. App'x at 823–24. No single factor is conclusive. *See*

*Madura v. BAC Home Loans Servicing L.P.*, 851 F. Supp. 2d 1291, 1294 (M.D.

Fla. 2012).

Here, Defendant Pawnee argues Plaintiffs waived their right to a jury trial when they signed the Pawnee Lease Agreement, which contained the following provision: "YOU WAIVE, INSOFAR AS PERMITTED BY LAW, TRIAL BY JURY." Dkt. 86 at 1 (emphasis in original). Defendant argues that Dr. Averill—as a licensed attorney—is a sophisticated party who should have understood the waiver and known he could attempt to negotiate the terms in the Pawnee Lease Agreement. Dkt. 57 at 5. Furthermore, Defendant argues the waiver was conspicuous and that Plaintiffs had the same level of bargaining power as Defendant Pawnee. *Id.* at 4, 6. Plaintiffs counter that there was no opportunity for negotiation, the jury trial waiver is ambiguous, and Dr. Averill was not familiar with this type of law. Dkt. 68.

The Court will defer ruling on this motion. The Court instructs the parties to brief this issue again at the close of discovery.

## CONCLUSION

Defendant Pawnee's Motion to Dismiss (Doc. 53) is **GRANTED**, and the action is **DISMISSED** without prejudice. The Court will rule on Defendant's Motion to Strike Jury Demand (Dkt. 57) at a later date.

**DONE AND ORDERED** at Tampa, Florida, on October 27, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

23

**<u>COPIES FURNISHED TO:</u>**
Counsel of Record